IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ODETTE LOPEZ COLLAZO, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILFREDO RUIZ-FELICIANO, et al.**<br><br>Defendants | **Civil No.** 21-1553 (DRD) |

**OPINION AND ORDER**

Pending before the Court is defendants' motion for summary judgment (Docket No. 23).[1] For the reasons set forth below, the Court **GRANTS** Defendants' motion.

**I.      Background**

Plaintiffs, Odette López Collazo ("López-Collazo"); Verania Crespo Cruz and Maritza Font Ortíz brought forth a civil action against the Municipality of Maricao, Wilfredo Ruiz Feliciano ("Ruíz-Feliciano") the Mayor of the Municipality of Maricao; the Director of Finance Office of the Municipality of Maricao, Luis A. Vélez, and the Accounting Clerk of the Municipality of Maricao, Nancy Laboy (collectively, the "Defendants"). (Docket No.1). Plaintiffs request compensatory and punitive damages, injunctive and equitable relief under the First and Fourteenth Amendments to the Constitution of the United States of America, Sections 1983 and 1988 of Title 42 of the United States Code for the deprivation of Plaintiffs' Constitutional Protected Rights. Id. Specifically, Plaintiff López-Collazo alleges discrimination due to her political affiliation. (Docket No. 30 at 5). According to Plaintiff López Collazo, the newly elected mayor Ruiz-Feliciano decided not to renew her appointment as an Internal Auditor because he wanted someone affiliated with the Popular Democratic Party. *See*, Id.

---

[1] Plaintiff Odette López-Collazo filed her opposition thereto. (Docket Nos. 30 and 31). Defendants replied. (Docket No. 32-1). Plaintiff Odette López-Collazo filed a *Brief Reply to Memorandum* thereto. (Docket No. 36).

Defendants filed a Motion for Partial Summary Judgment and Brief in Support Thereof. (Docket No. 23). Specifically, Defendants request the dismissal of all of López-Collazo's claims and all claims against co-defendant Nancy Laboy. (Docket No. 23 at 2). Plaintiff López-Collazo opposed said motion arguing that material facts affect the outcome of the suit and requires that a trial be held. (Docket No. 30). However, Plaintiffs had no objection that the Motion for Summary Judgment be granted as to co-defendant Nancy López and that all claims against her be dismissed. (Id. at 2).

According to Defendants, "plaintiff is not claiming that she was fired from her position as internal auditor but rather that the trust position **vacancy** that she left had to be filled by the incoming administration by appointing her." (Docket No. 23 at 6). Defendants argue that "[t]here is not a single precedent standing for the proposition that any particular individual has a right to be appointed to a vacant trust position that he/she held under a previous administration." Id. at 7. Additionally, Defendants posit that "there is no record of any First Amendment liability being imposed on a nominating authority for the termination of an employment that occurred prior to that officer taking office." Id. at 8.

## II.     Factual Findings

Inasmuch as Plaintiff López-Collazo either failed to properly dispute the facts set forth by Defendants, or admitted to them, the factual findings numbered below stem from Defendants' Statement of Uncontested Material Facts (Docket No. 23, Exhibit 1), unless otherwise stated. Upon careful review of the record, the Court finds the following facts are undisputed.

1. López-Collazo began working for the Municipality of Maricao in the year 1993, which is when former New Progressive Party ("NPP") Mayor, Hon. Gilberto Pérez-Valentín took office upon prevailing in the 1992 election. *See*, Docket No. 23

2. Plaintiff López-Collazo has always been a member of the NPP. The extent of her activism is limited to voting. See, Docket No. 23, Exhibit A, pages 8-9.

3. The first appointment plaintiff López-Collazo ever received at the Municipality was dated November 1, 1993 to the position of accounting office clerk, on a transitory basis. *See*, Docket No. 23, Exhibit A, pages 9-10.

4. On January 1, 1994, plaintiff López-Collazo was first appointed to the trust position of internal auditor. *See*, Docket No. 23, Exhibit A, page 11, 17-24.

5. Plaintiff López-Collazo was the first person ever to hold the position of internal auditor in the Municipality of Maricao. *See*, Docket No. 23, Exhibit A, page 12, 5-8.

6. Plaintiff López-Collazo's January 1994 trust appointment did not state an expiration date. *See*, Docket No. 23, Exhibit A, page 12,1-8.

7. The parties stipulated that López-Collazo was reappointed as internal auditor after Mayor Pérez-Valentín's reelections in 1996, 2000, 2004, 2008, 2012 and 2016. *See*, Docket No. 23, Exhibit A, page 13, 1-8.

8. The parties further stipulated that what López-Collazo received were not contracts but appointments. *See*, Docket No. 23, Exhibit A, page 13, 10-25 and page 14, 1-5.

9. López-Collazo received an appointment to the trust position of internal auditor effective January 13, 2017, signed by the former mayor on January 24, 2017 and by plaintiff, under oath, on March 2, 2017. (See, Docket No. 26, Exhibit B)

10. A December 18, 2020,signed by former Mayor Pérez-Valentín and addressed to Ms. López-Collazo, advised her that she would not be holding her trust position as of January 2021 and that her position would cease effective December 31, 2020. See, Docket No. 26, Exhibit C.

11. López-Collazo acknowledges that she was always reappointed as internal auditor because she held former Mayor Pérez-Valentin's trust to perform those duties. See, Docket No. 23, Exhibit A, page 17, 3-24.

12. On December 17, 2020, plaintiff López-Collazo, former Mayor Pérez-Valentín and former Director of Human Resources, Ms. Mayra J. Agostini-Ruiz signed a form titled

"Election Form Early Retirement Incentive Program Act No. 80 of August 3, 2020 Form (Act 1-1990)". *See,* Docket No. 26, Exhibit D.

13. The incentivized retirement form describes plaintiff's position as one of "trust with no right to reinstallation in career-service position". (Docket No. 26, Exhibit D).

14. The incentivized retirement form stated Plaintiff's estimated separation date as December 31, 2020. See, Docket No. 26, Exhibit D.

15. On the second page of the incentivized retirement form, plaintiff's reason for separation is stated as "change of administration, for being in a position under service of trust." (Docket No. 26, Exhibit D)

16. Plaintiff López-Collazo eventually did not avail herself to the incentivized retirement program, because the Financial Oversight and Management Board for Puerto Rico did not approve it. *See*, Docket No. 23, Exhibit A, page 17, 4-18.

17. Plaintiff López-Collazo is certain that she came back to the Municipality on January 7, 2021. *See*, Docket No. 23, Exhibit A, page 24,10-23.

18. As of January 7, 2021, when plaintiff López-Collazo was demanding to be reappointed to her trust position, outgoing Mayor Gilberto Pérez-Valentín was still the nominating authority and the only person who could perform appointments. *See*, Docket No. 23, Exhibit A, page 29,3-25.

19. López-Collazo acknowledges that her former trust position of internal auditor was vacant when co-defendant Wilfredo Ruiz-Feliciano took office as mayor. (Docket No. 23, Exhibit A, at p. 31, lines 3-7)

20. Plaintiff never worked for the current administration. *See,* Docket No. 23, Exhibit A p. 31: 23-25.

21. López-Collazo further acknowledges that it was the mayor's prerogative to fill the vacant position with whomever he wanted. See, Docket No. 23, Exhibit A, at p. 36, lines 5-10

### III.     Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 179 (1st Cir. 1997). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Johnson v. U. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (*citing* Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." Sands v. Ridefilm Corp., 212 F.3d 657, 660–661 (1st Cir. 2000) (*citing* Liberty Lobby, Inc., *supra*, at 247–248); Prescott, *supra*, at 40 (1st Cir. 2008) (*citing* Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (*citing* the advisory committee note to the 1963 Amendment to Fed. R. Civ. P.

56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. See DeNovellis v. Shalala, *supra*, at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (*citing* Celotex Corp. v. Catrett, *supra*, at 323). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" which affects the granting of a summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); *see*, *also*, Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., *supra*, at 477. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) ("We afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.") (internal citations omitted); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ...

we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture*.*" Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Furthermore, the Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. *See,* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); Anderson v. Liberty Lobby, Inc., *supra*, at 255; *see, also*, Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves, *supra*, at 150 (*quoting* Anderson v. Liberty Lobby, Inc., *supra*, at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56 (a). Hence, in order to prevail, Defendants must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiffs, the applicable law compels a judgment in its favor. A fact is deemed "material" if the same "potentially affect[s] the suit's determination… issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Marrero v. Hosp. Hermanos Melendez, Inc., 253 F. Supp. 2d 179, 186 (D.P.R. 2003) (citations omitted)

**IV.    Discussion**

Section 1983 is the customary vehicle through which a plaintiff can seek relief for a state actor's political discrimination. Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012). For this purpose, Puerto Rico is the functional equivalent of a state. Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011). Section 1983 "creates a private right of action for redressing abridgments or deprivations of federally assured rights." Centro Médico del Turabo, Inc. v.

Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). As manifested by the Supreme Court, Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

A claim pursuant to Section 1983 must satisfy two essential elements: (1) "the defendant must have acted under color of state law" and (2) "his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law." Grajales, 682 F.3d at 46; Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008). As to the first inquiry, acting under color of state law requires that a "defendant in § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988). Furthermore, there are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been causally connected to the deprivation." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). Plaintiff's Section 1983 claims, as expressed below, are grounded upon infringements of the First Amendment.

Political discrimination is proscribed by the First Amendment of the United States Constitution. Kusper v. Pontikes, 414 U.S. 51, 56–57 (1973). The First and Fourteenth Amendments protect the rights of individuals to freely associate with others "for the common advancement of political beliefs and ideas." Id. "The First Amendment protects associational rights. Incorporated within this prophylaxis is the right to be free from discrimination on account

of one's political opinions or beliefs." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004) (citing LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir.1996)). The one exception to the rule against political discrimination in public employment is reserved for positions where political loyalty is a legitimate requirement for the position in question. *See* Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Branti v. Finkel, 445 U.S. 507, 516-518 (1980); Elrod v. Burns, 427 U.S. 347, 372-73 (1976) (plurality opinion). Subject to the latter exception, government officials cannot discharge public employees simply because of their political affiliations. *See,* Elrod, 427 U.S. at 350. Additionally, "[p]romotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." Rutan, 497 U.S. at 75 (rejecting the view that "[o]nly those employment decisions that are the 'substantial equivalent of a dismissal' violate a public employee's rights under the First Amendment.") (citing Rutan v. Republican Party of Ill., 868 F.2d 943, 954-957 (7th Cir. 1989)). The First Amendment serves to protect the freedom of government employees to associate with a political party, limiting the government's rights to interfere with said beliefs, except in the most compelling circumstances. Id. at 76.

To succeed on a claim of political discrimination, a plaintiff must prove: "(1) he and the defendants have 'opposing political affiliations,' (2) the defendants knew his affiliation, (3) he experienced an adverse employment action, and (4) his political affiliation was a 'substantial' or 'motivating' factor for the adverse action." Santiago-Diaz v. Rivera-Rivera, 793 F.3d 195, 199 (1st Cir. 2015) (citing Ocasio–Hernández v. Fortuño–Burset, 777 F.3d 1, 5 (1st Cir. 2015)); see also Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 236 (1st Cir. 2012); Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 239 (1st Cir. 2010).

The First Circuit Court of Appeals has held that "in Puerto Rico, state employees fall generally into two categories: those who hold 'career' positions and those who hold 'trust' or 'confidence' positions. Trust employees are involved in "policy making" or render direct services

to particular government figures." Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009) These employees are generally of free selection and removal. Id. The Court's analysis turns on the "[a]ctual functions of the job, not titles" and the "official description of job functions is a presumptively reliable basis for determining those functions." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 (1st Cir. 2010) (internal citations omitted); see also Galloza, 389 F.3d at 31 ("[A] perusal of the job description for the position is the most useful starting point for determining the position's inherent attributes.").

As a general rule, a government employer cannot discharge public employees "merely because they are not sponsored by or affiliated with a particular party." Id. at 28 However, an exception to the general rule arises when "political affiliation is an appropriate requirement for the effective performance of the public office involved." Id.

It the instant case, it is undisputed that Plaintiff López-Collazo was the internal auditor for the Municipality of Maricao and that said position is considered to be a 'trust' position. Plaintiff López – Collazo believes is that "the nominating authority cannot refuse to appoint plaintiff to the position of Internal Auditor solely because of her political affiliation being her the only person available and that qualifies." (Docket No. 36). Plaintiff must prove an adverse employment action in order to succeed on a First Amendment political discrimination action. In the context of a Title VII claim, this Court has held "for an act to be an adverse employment action, the employer must have either (1) taken something of consequence from the employee by, for example, demoting him, reducing his salary, or divesting him of significant duties, or (2) withheld an accouterment of the employment relationship." Del Pilar Salgado v. Abbott Lab'ys, 520 F. Supp. 2d 279, 291 (D.P.R. 2007). Plaintiff points to no caselaw that would have this Court consider a refusal to hire a former government employee to be an adverse employment action. In this case, Plaintiff was never defendant's Ruíz-Feliciano employee since her position was vacant when Ruíz-Feliciano became mayor. SUMF #19. Since Plaintiff's position was vacant when Ruíz-Feliciano became

mayor, her allegations circumscribe to her re-appointment by the new mayor to her previous position as Internal Auditor. Plaintiff's contention is that her "political affiliation was the only reason why defendant Wilfredo Ruiz-Feliciano refused to appoint plaintiff López - Collazo to said position of Internal Auditor." (Docket No. 36). However, as explained above, the First Circuit has held that trust employees are, under Puerto Rico law, of free selection and removal. *See*, Galloza v. Foy, 389 F.3d 26, 34 (1st Cir. 2004) Additionally, it has been held that a holder of a trust position does not have a constitutionally protected property interest in that position. Id.

In this case, the previous mayor of the Municipality of Maricao, not defendant Ruíz-Feliciano, informed Plaintiff that she would lose her trust position on December 31, 2020. SUMF #10. It was. According to Plaintiff, the evaluation and decision to rehire her as Internal Auditor should have been made "on Plaintiff's merits and not on her political affiliation." (Docket No. 30 at 11) While it is true that Defendant had the option to rehire Plaintiff to her position of internal auditor, it is also true that her position is one of free selection. The applicable caselaw protects an employee from an adverse employment action. It does not grant a right to be rehired. As stated above, trust employees are generally of free selection and removal, meaning that, with limited exceptions which need not be catalogued here, they may be hired and fired at will." Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009) Thus Defendant, Ruíz- Feliciano held the authority to decide who to hire for the internal auditor position. The Plaintiff's previous experience as internal auditor for the municipality is, although relevant, does not oblige co-defendant Ruíz-Feliciano to rehire. Ruíz-Feliciano had the liberty to hire the internal auditor he deemed fit for the position. Considering the above, the Court deems it unnecessary to dive into the topic of qualified immunity.

V.     Conclusion

For the reasons set forth above, the Court hereby dismisses all claims against co-defendant Nancy Laboy and all claims by Plaintiff Odette López Collazo against co-defendant Ruiz Feliciano. As to López Collazo's claims against co-defendant Luis A. Vélez for failure to provide Plaintiff her

liquidation payment, the Court is disinclined to rule on said matter at this time since neither party has put the Court in a position to properly rule as to this matter.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of September 2023.

*S/ DANIEL R. DOMÍNGUEZ*
DANIEL R. DOMÍNGUEZ
U.S. District Judge